UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| In re: ) | Lead Case No. 1:03-CV-1000 |
| ) | |
| ) | **CLASS ACTION** |
| UNUMPROVIDENT CORP. ) | |
| ERISA BENEFITS DENIAL ACTIONS ) | MDL Case No. 1:03-MD-1552 |
| ) | |
| ) | Chief Judge Curtis L. Collier |

## MEMORANDUM

Before the Court is the motion for class certification (Court File No. 29) filed by plaintiffs Theresa Keir, Michelle Lynn Washington, Karen Gately, Thomas Rocco, Thomas P. Davis, Marvina Jenkins, Edmundo M. Rombeiro and the proposed class members (collectively, "Plaintiffs").[1] Defendants UnumProvident Corporation ("UnumProvident"), First Unum Life Insurance Company, Next Level Group Long Term Disability Plan, Next Level Communications, The Paul Revere Life Insurance Company, Colonial Life & Accident Insurance Company, Provident Life & Accident Insurance Company, J. Harold Chandler, Shirley Hoiland, Carol Jewel, Robert E. Olman, and Mary Patrick (collectively "Defendants") filed a response in opposition to Plaintiffs' motion (Court File No. 43). Plaintiffs then filed a reply brief (Court File No. 50). On July 18, 2007, the Court held oral arguments on Plaintiffs' motion. For the following reasons, the Court will **GRANT** Plaintiffs' motion (Court File No. 29).

---

[1]The Court is aware that several dispositive motions are also pending in this case. However, the Court finds, on the grounds of judicial efficiency, the class certification issue should be decided before the dispositive motions. *See Bowling v. Pfizer, Inc.*, 142 F.R.D. 302, 303 (S.D. Ohio 1991) (holding the court would consider motion for class certification prior to considering dispositive motions on the grounds of judicial efficiency; by deciding the class certification issue first, it becomes possible for a subsequent judgment to be binding on all the plaintiffs rather than on the named class representatives); *Bieneman v. City of Chicago*, 838 F.2d 962, 964 (7th Cir. 1988) (stating another reason for early certification is to identify the stakes of the case so that parties may choose their litigation strategies accordingly).

## I.  RELEVANT BACKGROUND AND FACTS

This multi-district litigation involves allegations that UnumProvident and its subsidiaries devised and implemented an elaborate and corporate-wide scheme to illegally deny or terminate the long-term disability claims of thousands of disabled Americans, all in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. (Court File No. 20, Consolidated Amended Class Action Complaint ("CAC"), at ¶ 1)[2]. According to the CAC, UnumProvident is the leading provider of group disability insurance in the United States (*id*.). The named plaintiffs are individuals insured under group long-term disability benefit plans/policies underwritten and managed by UnumProvident's subsidiaries (*id*. at ¶ 9). Plaintiffs brought this action "to stop these illegal and alarming practices and to ensure that past, current and future victims obtain a full and fair review of their claims" (*id*. at ¶ 8).

Plaintiffs identify a variety of practices allegedly carried out by Defendants, including:

a. Instituting targets, budgets, or goals for cost-savings to be attained through the denial and termination of claims; the claims do not receive a proper review by a fiduciary and are denied or terminated based upon UnumProvident's financial targets rather than the medical and vocational evidence concerning claimants' disabilities;

b. Providing financial incentives to in-house physicians who will "rubber stamp" previously made business decisions; the physicians thus ignore their appropriate ethical obligations and overlook strong medical evidence that would ordinarily require a disability claim to be approved;

c. Implementing of compensation and/or bonus plans that reward Company

---

[2]This is the latest in a number of ruling in this long-running multi-district litigation case involving several types of alleged misconduct on the part of Defendants. For a fuller background of the facts and issues, *see also In re UnumProvident Corp. Sec. Litig.*, 396 F.Supp.2d 858 (E.D. Tenn. 2005); *Gee v. UnumProvident Corp.*, No. 1:03-CV-147, MDL: 1:03-MD-1552, 2005 WL 534873 (E.D. Tenn. Jan. 13, 2005).

  management for denying or terminating as many claims as possible to meet special financial goals set by the Company;

d.  Authorizing more senior in-house doctors to alter the written reports of other "uncooperative" in-house doctors in order to justify a claim denial or termination;

e.  Creating secret documents for each claim, at the time that claims are filed, that, upon information and belief, sets a target date for cutting off future disability payments; these "Duration Management" documents reflect business decisions made by non-medical claims personnel as to when the [C]ompany believes claim payments should stop in the future; physicians are not involved in creating these secret documents which are kept outside of the claims file and withheld from claimants, their attorneys, and reviewing courts, and are not produced in discovery during litigation;

f.  Encouraging a game among the in-house physicians called the practice of "insurance medicine"; these in-house physicians are prompted, encouraged, and pressured into (1) changing their valid medical opinions as to a claimant's disability in order to justify a business-driven claim denial; (2) closing their eyes to numerous sources of medical evidence that support a claimant's disability; (3) remaining quiet about their personal medical opinions that require further analysis, review, testing, and follow up that would reveal the claimant's obvious disability; and (4) putting "canned" statements into their written reports that, on the surface, appear to validate a previous decision by claims personnel to terminate ongoing disability payments to a claimant or to deny a claim in the first instance;

g.  Recruiting claims personnel who have a reputation for "closing claims" (cutting off the ongoing monthly benefits of disabled individuals);

h.  Designing a system in which claimants who have multiple disabling conditions will never receive an integrated overview as to how all of the disabling conditions combine to disable the claimant; by deliberately fragmenting the claim into a number of pieces and preventing a comprehensive review of individuals with "co-morbid" conditions, the Company ensures that the claimant will not receive a comprehensive and fair review of the claim; and

i.  Employing numerous other practices that pressure claims handling personnel into causing claims to be denied or terminated without receiving a proper review.

(*id.* at ¶ 7(a)-(i)). Plaintiffs argue that since UnumProvident put "its own financial interest above

the disabled individuals who have been placed in its trust," UnumProvident "caused egregious and routine breaches of fiduciary duty under ERISA" (*id*. at ¶ 8). Plaintiffs request certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2), as they seek injunctive and declaratory and not monetary relief.

On July 18, 2007 the Court held a hearing on this motion. Counsel for each side vigorously argued their respective positions. From these arguments the Court understands the parties do not contest two of the prerequisites required for class certification, i.e. numerosity and commonality. However, the parties do dispute the issues of typicality and adequacy of representation. The parties also disagree strongly over the weight this Court must give to allegations in the CAC and to what extent this Court is free to delve into the merits of the case.

## II. STANDARD OF REVIEW

"In order to obtain class certification, plaintiff[s] must first satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation." *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002). Additionally, Plaintiffs "must demonstrate that the class fits under one of the three subdivisions of Rule 23(b)." *Id.* As stated above, Plaintiffs seek class certification under Rule 23(b)(2). Rules 23(a) and 23(b)(2) provide:

Rule 23. Class Actions

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the

> prerequisites of subdivision (a) are satisfied, and in addition:
>> . . .
>> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect the class as a whole[.]

Fed. R. Civ. P. 23(a) & 23(b)(2). A district court enjoys broad discretion in certifying class actions, but must exercise this discretion within the framework of Fed. R. Civ. P. 23 ("Rule 23"). *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

When evaluating whether to certify a class, the district court must take the allegations of the plaintiffs as true, with any doubts resolved in favor of certification. *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Co.*, 29 F. Supp. 2d 825, 831 (N.D. Ohio 1998) (citing *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1029 (6th Cir. 1977)). Although the Court may (and often must) look beyond the bare pleadings, the Court may not examine the merits of the parties' claims or defenses. *Garrish v. United Auto., Aerospace, & Agric. Implement Workers of Am.*, 149 F. Supp. 2d 326, 330 (E.D. Mich. 2001) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met") (internal quotations omitted)).

The Court is required to conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class. *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). The plaintiffs bear the burden of demonstrating all of the requirements for class certification have been met. *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079. For purposes of certifying a class, mere repetition of the language of the governing federal rule is not sufficient; there must be an adequate statement of the basic facts to indicate that each requirement of the Rule is fulfilled. *Id.*

## III. DISCUSSION

As stated above, Defendants do not contest the numerosity prerequisite, nor do they dispute that there is at least one common issue among Plaintiffs. Instead, Defendants challenge Plaintiffs' motion on the following grounds: (1) "the existence of individualized issues on both liability and remedy precludes any finding of the homogeneity and cohesiveness required for certification under Rule 23(b)(2)"; (2) "the 'immature tort' doctrine precludes certification because of the very novelty of this [§] 502(a)(3) claim"; (3) "[e]ach class member who believes his or her claim was wrongfully denied has both an economically viable cause of action, and a means of bringing it"; (4) "any payments of benefits they expect as a result of this case are not 'plainly incidental to the declaratory and injunctive relief' that they claim is the 'focus' of their claims"; and (5) "the incompatibility between these claims and Rule 23 certification is highlighted by the defective nature of the class definition" (Court File No. 43, Defendants' Memorandum in Opposition ("Def.'s Memo"), at 3-4).

Although Defendants do not dispute two of the prerequisites, the Court deems it helpful to analyze this motion in the framework of all four Rule 23 factors. Therefore, the Court will discuss and examine each of the factors in turn. However, before beginning the analysis, the Court will address Defendants' objection to the proposed class definition.

### A. Adequacy of Plaintiffs' Proposed Class Definition

Before a district court may certify a class pursuant to Rule 23, "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." 5 James Wm. Moore et al., *Moore's Federal Practice* ¶ 23.21[1] (3d ed.1998). Furthermore, the identity of class members must be ascertainable by reference to objective criteria. *Garrish*, 149 F. Supp. 2d at 331 (citing *Crosby v.*

*Soc. Sec. Admin.*, 796 F.2d 576, 580 (1st Cir.1986)). A precise definition allows a court to determine who is entitled to relief, who is bound by a judgment, and who is entitled to notice of the action. *Id*. In this case, Plaintiffs propose to define the class as follows:

> All plan participants and beneficiaries insured under ERISA[-]governed long-term disability insurance policies/plans issued by UnumProvident and the insuring subsidiaries of UnumProvident throughout the United States who have had a long-term disability claim denied, terminated, or suspended on or after June 30, 1999 by UnumProvident or one or more of its insuring subsidiaries after being subjected to any of the practices alleged in the Complaint.

(Court File No. 30, Plaintiffs' Memorandum in Support ("Pl.'s' Memo"), at 1). Defendants argue this definition is defective because, to determine whether a particular person is in the class, the Court would have to first determine whether that person's claim was "denied, terminated, or suspended" and then will need to determine whether the decision was a result of being "subjected to any of the practices alleged in the Complaint" (Def.'s Memo at 20). For their part, Plaintiffs rely on *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998), arguing that a similarly defined class did not require the Court to address the merits of the individual claims.

While *Fallick* did involve a similarly defined class, that case lends no support to whether the putative class in this matter is a properly defined class since the *Fallick* court addressed only the question of standing, and not whether the class definition was proper. Nonetheless, at least one other court has rejected an argument similar to Defendants'. In *Forbush v. J.C. Penny Co., Inc*., the proposed class was defined as "including all current and former Penny employees 'whose pension benefits have been, or will be, reduced or eliminated as a result of the overestimation of their Social Security benefits.'" 994 F.2d 1101, 1105 (5th Cir. 1993). The defendant argued this definition was overly circular, in that the court would first have to determine whether an employee's pension benefits were improperly reduced before such person could become a member of the class. *Id*. The

7

*Forbush* court found the defendant's argument to be meritless because it would preclude certification in just about any class of persons alleging injury from a particular action or event. *Id*. The court stated, "[t]hese persons are linked by [a] common complaint, and the possibility that some may fail to prevail on their individual claims will not defeat class membership." *Id*.

The Court agrees with the reasoning set forth in *Forbush*. While the class definition adopted by Plaintiffs is not perfect, it is sufficiently definite so that it is feasible to determine who is or is not a class member. It may be necessary for the Court to make some factual inquiry, but that necessity does not render the definition defective. The definition here imposes on the Court no more of a burden than the one authorized in *Forbush*, or, for that matter, in *Fallick*. Accordingly, the Court will **DENY** Defendants' objections to the proposed class definition.

### B. Requirements of Rule 23(a)

Since the Court finds Plaintiffs to have presented a proper class definition, the Court will now discuss whether Plaintiffs have satisfied the prerequisites of Rule 23(a).

#### 1. Numerosity

The first subsection of Rule 23(a) requires the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The reason for [the impracticability] requirement is obvious. Only when joinder is impracticable is there a need for a class action device." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079 (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 3.01, 3-4 (3d ed. 1992)).[3] There is no strict numerical test for determining the

---

[3] Since the time *In re American Medical Systems, Inc.* was decided, Newberg has published a fourth edition of the treatise "Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002). The Court will use "*Newberg*" to short-cite the fourth edition of this treatise but will not update any of *In re American Medical Systems, Inc.*'s citations to the third edition. Such citations will be referenced by a parenthetical: ("citing 1 *Newberg,* 3d ed.").

impracticability of joinder. *Id.* (citing *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir. 1976)). Rather, the numerosity requisite "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 330 (1980). However, as a practical matter, when class size reaches substantial proportions, the impracticability requirement is usually satisfied by the numbers alone. *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079 (citing 1 *Newberg*, 3d ed., § 3.05, 3-26).

While there is no fixed minimum number which establishes numerosity, the United States Court of Appeals for the Sixth Circuit has held that a class of 800 suffices. *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004). In the CAC, Plaintiffs allege joinder is impracticable, based on their belief "there are at least tens of thousands of Class Members. Their exact number and identities are known to defendants." (CAC at ¶ 28). Plaintiffs' memorandum states, "defendants denied more than 31,000 new claims during the proposed class period from June 30, 1999 through the present . . . [and] at least 6,200 plan beneficiaries were subjected to defendants' alleged illegal claims practices, thus plainly satisfying the numerosity requirement without also taking into account claim terminations and suspensions." (Pl.'s Memo at 8). Given such allegations in the CAC and Plaintiffs' memorandum and the fact Defendants concede the numerosity element has been met, the Court is satisfied that joinder of all class members is impracticable.

### 2. Common questions of law and fact

Rule 23(a)(2) requires that for certification there must be "questions of law or fact common to the class." The commonality requirement is interdependent with the impracticability of joinder requirement; these "tests together form the underlying conceptual basis supporting class actions."

9

1 *Newberg* § 3.10, 271. As the Supreme Court has described:

> The class-action was designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979). Class relief "is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.[']" *Id.* at 701. For in such cases, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Id.*

*Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982). The commonality test "is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1080 (quoting 1 *Newberg,* 3d ed. § 3.10, 3-50); *see also Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988) ("fact that questions peculiar to each individual member of the class remain after the common questions of the defendants' liability have been resolved does not dictate the conclusion that a class action is impermissible"). However, not all common issues will suffice to establish commonality; rather, the common issue must be such that its resolution will advance the litigation. *Sprague*, 133 F.3d at 397.

As Defendants concede, here the commonality requirement is met. The following issues are common to the class: whether UnumProvident implemented a uniform profit- and budget-driven claims review process whereby claims were decided based on UnumProvident's periodic fiscal targets rather than on the actual medical merits of a claimant's entitlement to long-term disability benefits, and whether such a policy violated Defendants' fiduciary duty to the plan beneficiaries, and, in turn, violated ERISA. Resolution of these issues will certainly advance the litigation. Thus, Plaintiffs have met the commonality requirement.

### 3. Typicality

"The test for typicality, like commonality, is not demanding." *Sprague*, 133 F.3d at 415

(quoting *Forbush*, 994 F.2d at 1106). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082 (quoting 1 *Newberg,* 3d ed. § 3.13, 3-76 (footnote omitted)). Put another way, "when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff." *Id.* A plaintiff's claim is "typical" if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.*; *Gen. Tel. Co.*, 446 U.S. at 330 (the "typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiffs' claims"); *Senter*, 532 F.2d at 525 n.31 ("[t]o be typical, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law"). If it transpires that the named plaintiff could prove his/her own claim and this would not necessarily prove another class member's claim, the typicality element is not satisfied. *Sprague*, 133 F.3d at 399. A "necessary consequence" of the typicality requirement is "the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082. (citing 1 *Newberg,* 3d ed. § 3.13, 3-75).

Defendants claim Plaintiffs cannot demonstrate typicality in this case because "individual issues preclude a finding of homogeneity and cohesiveness." (Def.'s Memo at 4). Specifically, Defendants state the following reasons: (1) determining the question of liability will require an examination of individual circumstances; (2) for any plaintiff to prevail on a claim for a constructive trust, he or she would need to prove entitlement to benefits; and (3) proof of injury and causation

11

will necessarily vary depending on the particular claimant and practice at issue. For example, Defendants contend the Court will not be able to determine whether a particular practice was applied to a class member without looking at that person's claim and making a judgement about its merits.

The Court does not see how the objection related to Plaintiffs' request for a constructive trust fits into the Court's obligation to determine typicality. A constructive trust is just one of the specific forms of relief sought by Plaintiffs. It is not even the predominant relief requested. Should the Court determine Plaintiffs prevail on their claims and Plaintiffs are entitled to some relief, it is possible the Court could still reject their request for a constructive trust. Further, the fact some individualized determination may have to be made should not preclude class certification. *See Caranci v. Blue Cross & Blue Shield of Rhode Island*, 194 F.R.D. 27, 40 (D.R.I. 2000) (finding the possibility the case may require some individualized determination did not warrant denial of class certification because, "[i]f and when the named plaintiffs establish entitlement to relief, the Court can then develop a procedure to further define the scope of the class and the appropriate relief"). In short, Defendants' concern over constructive trusts is inapposite to the issue of typicality.

On the other hand, Defendants' contention that typicality is not satisfied when liability turns on individualized factors is undoubtedly correct. *E.g., Sprague*, 133 F.3d at 399. Notwithstanding the validity of that general proposition, the theory of liability asserted by Plaintiffs in this case does not *focus* on individualized factors. This is because Plaintiffs have characterized their lawsuit as a challenge to UnumProvident's uniform policies and practices with respect to reviewing claims. Framed this way, Plaintiffs' allegations will involve a determination of whether UnumProvident implemented a uniform, profit-driven scheme to deny all claims based on financial concerns, rather than based on the actual merits of the application for benefits, and whether such a policy violated

12

ERISA. Typicality is present in this case because Plaintiffs' allegations, if true, have the same essential character as those of the class as a whole in that the entire class was subject to the same uniform claims review policies and practices. *See Forbush*, 994 F.2d at 1106 (finding typicality where plaintiff framed her challenge in terms of defendant's general practice of overestimating social security benefits); *Sutton v. Med. Serv. Ass'n of Pennsylvania*, No. 92-4787, 1993 WL 64565, at *4 (E.D. Pa. Mar. 5, 1993) ("Plaintiff's claim necessarily has the required typicality, since it arises from the same uniformly applied practice of Pennsylvania Blue Shield that gives rise to the claims of the other class members and is based on the same course of conduct and legal theory."). Accordingly, the Court finds the requisite of Rule 23(a)(3) are met.[4]

### 4. Adequacy of Representation

The last factor the Court must consider is the adequacy of representation afforded by the named plaintiffs of the class. Rule 23(a)(4) allows certification only if "the representative parties will fairly and adequately protect the interests of the class." This prerequisite is essential to due process because a final judgment in a class action is binding on all class members. *Hansberry v.*

---

[4]During oral arguments, Defendants relied heavily on *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639 (6th Cir. 2006), for the proposition that the Court cannot certify a class simply because Plaintiffs assert a general policy, and must instead examine what the plaintiffs can show. While the *Reeb* court did conclude that, in order to find typicality, the precise nature of the plaintiffs' various claims had to be examined, the *Reeb* court was speaking in terms of the requirements in a case where a plaintiff requests class certification of generalized Title VII discrimination claims. *See Reeb*, 435 F.3d at 644-45 (noting "[e]mployment discrimination claims require proof that particular managers took particular employment actions and that either the managers were motivated by a discriminatory animus or the actions resulted in a disparate impact upon the class; the district court is therefore required to examine the incidents, people involved, motivations, and consequences regarding each of the named plaintiffs' claims to determine the typicality element of Rule 23(a)."). Contrary to Defendants' arguments, the Court will not need to confront such individual determinations here.

*Lee*, 311 U.S. 32, 43 (1940); 1 *Newberg* § 3.21, 408; s*ee also Smith v. Babcock*, 19 F.3d 257, 265 n.13 (6th Cir. 1994) ("No class should be certified where the interests of the members are antagonistic, because the preclusive effect of the verdict may deprive unnamed class members of their right to be heard."). In *Senter*, *supra*, the Sixth Circuit articulated two criteria for determining the adequacy of representation: the named plaintiff(s) must (1) have common interests with unnamed members of the class and (2) vigorously prosecute the interests of the class "through qualified counsel." *Senter*, 532 F.2d at 525 (citing *Gonzales v. Cassidy*, 474 F.2d 67, 73 (6th Cir. 1973)); *Cross*, 553 F.2d at 1031 (Rule 23(a)(4) tests "the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent"); *see also Falcon*, 457 U.S. at 157 n.13 (the adequacy of representation requirement "raises concerns about the competency of class counsel and conflicts of interest")). This requirement overlaps with the typicality requirement because, in the absence of typical claims, the named plaintiff or class representative has no incentive to pursue the claims of the other class members. *Id.*

During the hearing on this motion, Defendants argued that Plaintiffs are not representative of the class because they are requesting atypical relief, that is, they are requesting equitable relief rather than monetary entitlement to benefits. The fact Plaintiffs are seeking a form of relief which, in Defendants' opinion, is atypical, is not grounds to find Plaintiffs to be unrepresentative of the class. Plaintiffs, who were all allegedly subject to an improper claims review process, seek to obtain "a full and fair review of their claims pursuant to a claims process that is free of the taint of defendants' violations and that instead complies with the strict mandates and requirements of ERISA." (Pl.'s Memo at 14). This is obviously not antagonistic to the interests of the proposed

14

class (again, defined as those denied benefits because they, too, were subject to an improper process). Additionally, Plaintiffs' counsel is qualified and capable of handling this litigation. "[B]oth lead counsel and associated plaintiffs' counsel have extensive experience in complex class action litigation and have collectively handled literally hundreds of cases involving ERISA and other matters." (Pl.'s Memo at 15; *see also* Court File No. 29, Ex. I). Thus, the requirements of Rule 23(a)(4) have been met.

### B. Requirements of Rule 23(b)(2)

In addition to meeting the requirements of Rule 23(a), a proposed class must also satisfy at least one of the criteria set forth in Rule 23(b). In the instant case, Plaintiffs seek certification under Rule 23(b)(2). Such certification is proper when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). This standard is met when "the common claim is susceptible to a single proof and subject to a single injunctive remedy." *Senter*, 532 F.2d at 525. Injunctive relief must predominate the claims. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 410 (5th Cir. 1998); *Butler v. Sterling, Inc.*, No. 98-3223, 2000 WL 353502, at *6 (6th Cir. Mar. 31, 2000); *Rockey v. Courtesy Motors, Inc.*, 199 F.R.D. 578, 596 (W.D. Mich. 2001).

Here, Plaintiffs have met the requirements of Rule 23(b)(2). According to the CAC, Unum-Provident implemented a uniform policy of denying all claims based on the company's profits. This policy meets Rule 23(b)(2)'s requirement that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief

or corresponding declaratory relief with respect to the class as a whole." Plaintiffs seek an injunction to end or ameliorate the unlawful policy rather than money damages; therefore, injunctive relief predominates the claims. Whether some Plaintiffs or class members may gain benefits if the lawsuit succeeds does not diminish the request for injunctive relief.

Defendants argue that class certification under Rule 23(b)(2) is improper because Plaintiffs' expectation of a monetary recovery is not merely incidental to the injunctive relief requested. *See Reeb v. Ohio Dep't of Rehab. & Corr.*, 81 F. App'x 550, 554 n.5 (6th Cir. 2003) ("class certification under Rule 23(b)(2) when plaintiffs request monetary damage would be permissible, if at all, only where the monetary relief is incidental or tangential to the equitable relief such that it does not implicate the rights to a jury trial or to notice") (citing *Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894, 898-99 (7th Cir. 1999)). But in this case, Plaintiffs have not requested monetary relief. What they have requested is "declaratory relief determining the illegality of the conduct alleged and injunctive relief whereby UnumProvident and its subsidiaries are ordered to immediately cease, in all States of the United States of America, engaging in the offending practices" (CAC at p. 38, ¶ 2).[5]

If Plaintiffs prove UnumProvident implemented a uniform policy for denying claims in violation of ERISA and if Plaintiffs are able to obtain re-review of their benefits applications under an untainted process, upon re-review, some Plaintiffs may receive benefits (i.e. monetary relief). However, such relief would be an indirect consequence of the success of this litigation, and not a

---

[5]Plaintiffs request other equitable relief such as ordering UnumProvident to institute new national procedures compliant with ERISA, appointment of a neutral claims adjustor to provide full and fair review of all claims for benefits, or, in the alternative, a permanent injunction enjoining certain defendants from serving as claim fiduciaries and imposition of a constructive trust over any trust assets controlled by those defendants. (*See* CAC at pp. 38-39, ¶¶ 3-5).

16

result of any direct relief requested. In this Court's view, the fact some Plaintiffs may also attain benefits should not bar certification under Rule 23(b)(2). Courts that have denied certification under Rule 23(b)(2) have done so where monetary relief was the predominate relief sought, not where, as here, monetary relief was not even requested but, instead, could possibly result from the equitable relief sought. Thus, the Court finds the requirements necessary for Rule 23(b)(2) certification have been met.

### C. Immature Tort Doctrine

Finally, Defendants argue the Court should be hesitant to grant class certification due to the "immature tort" doctrine. Under this doctrine, "a mass tort cannot be properly certified without a prior track record of trials from which the district court can draw the information necessary to make the predominance and superiority analysis required by [R]ule 23." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 747 (5th Cir. 1996). The crux of Defendant's argument is, if Plaintiffs have a valid claim, it is a novel issue by which the Court has no "clear-cut, citation-supported statement of the precise elements of the claims and facts that will need to be proven." (Def.'s Memo at 17).

Defendant recognizes the Sixth Circuit has not explicitly adopted the immature tort doctrine. Plaintiffs, on the other hand, argue the immature tort doctrine does not apply in Rule 23(b)(2) cases as a whole. In the alternative, Plaintiffs argue there are several cases holding § 502(a)(2) and breach of fiduciary duty class actions are neither uncharted nor novel; thus, the immature tort doctrine would not preclude litigation.

Plaintiffs' argument regarding the immature tort doctrine's inapplicability to Rule 23(b)(2) cases finds is supported by case law. *See Wall v. Sunoco, Inc.*, 211 F.R.D. 272, 281 (M.D. Pa. 2002) ("The immature tort concept applies when the court is analyzing the predominance and superiority

17

factors for those cases that fall under Rule 23(b)(3) . . . . Under 23(b)(2), the predominance and superiority factors do not apply. Hence, the immature tort concept is also inapplicable."). *See also Barnes v. Am. Tobacco Co., Inc.*, 176 F.R.D. 479, 497 n.3 (E.D. Pa.), *aff'd* 161 F.3d 127 (3d Cir.), *cert denied*, 526 U.S. 1114 (1999) ("The immature tort doctrine is a doctrine which has been used to assess whether the superiority and/or predominance prongs of Rule 23(b)(3) have been satisfied; thus the immature tort theory is necessarily tied to Rule 23(b)(3). The immature tort doctrine simply is not applicable to this Court's Rule 23(b)(2) analysis . . ."). This Court thinks the logic of these cases (i.e., that the immature tort doctrine refers to the predominance and superiority factors, factors not part of the Rule 23(b)(2) analysis) is correct. Accordingly, this Court will apply the reasoning of these cases and find the immature tort doctrine to be inapplicable in this case. Thus, there is no need for the Court to reach the issue of whether Plaintiffs have presented an uncharted or novel issue.

**IV. CONCLUSION**

In accordance with this Memorandum, an Order will enter granting the Motion for Class Certification (Court File No. 29).

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**