UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

|  |  |  |
|---|---|---|
| In re: | ) | Lead Case No. 1:03-cv-1000 |
|  | ) | MDL Case No. 1:03-md-1552 |
| UNUMPROVIDENT CORP. | ) | Chief Judge Curtis L. Collier |
| ERISA BENEFITS DENIAL ACTIONS | ) |  |
|  | ) |  |

**MEMORANDUM**

Before the Court is a motion for summary judgment filed on behalf of Defendants UnumProvident Corporation; the Paul Revere Life Insurance Company; Provident Life and Accident Insurance Company; Provident Life and Casualty Company; First Unum Life Insurance Company; Unum Life Insurance Company of America; Colonial Life & Accident Insurance Company; Thomas J. Watjen;  and J. Harold Chandler ("Defendants") (Court File No. 141).[1]  Counsel for the lead plaintiff filed a response on behalf of all plaintiffs ("Plaintiffs") (Court File No. 153), and Defendants filed a reply (Court File No. 163).  Defendants' motion for summary judgment reincorporates arguments previously raised in Defendant's motion to dismiss for mootness (Court File No. 122), to which Plaintiffs responded (Court File No. 128) and to which Defendants supplemented with a reply (Court File No. 129).  On November 23, 2009, the Court heard oral arguments on Defendants motion for summary judgment.

For the following reasons, the Court will **GRANT IN PART** Defendants' motion for summary judgment.

---

[1]Individual defendant J. Harold Chandler joined this motion by reference in a separate filing (Court File No. 140).  All citations are to the lead case, 1:03-cv-1000, unless otherwise noted.

# I.	PROCEDURAL HISTORY

This case began when fifteen individual claimants filed seven class actions in six federal courts. These plaintiffs sued Defendants, its insuring subsidiaries, and two of its corporate officers, asserting breach of fiduciary duty claims under ERISA § 502(a)(3) (as codified, 21 U.S.C. § 1132(a)(3)). These plaintiffs were covered by group long-term disability insurance policies purchased by their individual employers either from Defendant Unum or one of its subsidiaries. Some of the plaintiffs claimed their benefits were wrongfully denied; others claimed their benefits were wrongfully terminated.

In 2003 the Judicial Panel on Multidistrict Litigation consolidated these cases before the Court. Plaintiffs filed a Consolidated Amended Complaint ("CAC") on February 25, 2004 (Court File No. 20). On November 14, 2004, after Plaintiffs filed their claim, UnumProvident entered into a multi-state regulatory settlement agreement ("RSA") with the Department of Labor ("DOL") and insurance regulators from Maine, Massachusetts and Tennessee. The RSA resolved investigations into UnumProvident's claims handling practices conducted by these three states' regulators. The RSA became effective on December 20, 2004 and has been signed by 48 of the state or territorial insurance commissioners. The RSA provides, under the supervision of the DOL and state insurance commissioners, UnumProvident agreed to make certain changes to their claims handling practices and to re-review Plaintiffs' claims under those new practices. The nature of the RSA has a considerable degree of overlap with this case.

The period for discovery ended in July 2007 (Court File No. 223). On September 4, 2007, the Court granted Plaintiffs' motion for class certification (Court File No. 231). After receiving leave to file an interlocutory appeal, however, the Sixth Circuit reversed class certification (Court

File No. 234). Therefore, the case has returned with the same posture as it had in September 2007. Once the Court has resolved the present motion for summary judgment, there will be nothing left for the Court to do in this matter, and the cases will ready for the transferor courts to schedule them for trial.

## II.    STANDARD OF REVIEW

The Court will grant summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 915 (6th Cir. 2009).

## III.    DISCUSSION

In Defendants' various filings, they argue Plaintiffs' claims for prospective relief are moot and Plaintiffs' claims for remedial relief are not available as a matter of law. The Court agrees in part that Plaintiffs' claim for prospective relief is moot, insofar as it relates to the imposition of new, national claim-handling procedures. The Court disagrees the remainder of Plaintiffs' claims are moot, and the Court declines to decide whether the remaining claims for remedial relief are available as a matter of law.

### A.  Whether Claims are Now Moot

Defendants argue Plaintiffs' claims for prospective relief are moot in light of the RSA. In short, Defendants argue the RSA does everything Plaintiffs could hope to accomplish through litigation. Plaintiffs argue their claim for prospective relief is not moot, because the RSA does not

3

provide the same relief they seek.[2]

In the CAC, Plaintiffs bring two claims for prospective relief. First, Plaintiffs demand "injunctive relief whereby UnumProvident and its subsidiaries are ordered to immediately cease, in all States of the United States of America, engaging in the offending practices delineated herein," and "to institute, under the supervision of the court, new, national procedures that are in full compliance with ERISA." CAC ¶¶ 2-3. Second, Plaintiffs urge the Court to "appoint[] a receiver and/or special master to serve as a neutral claims adjustor and assume the role of responsibility for responding to, acting upon, and making determinations pertaining to claims by plaintiffs and the Class and to provide a full and fair review, as required by 29 U.S.C. § 1133(2), of all claims for benefits under the plan that have been denied." *Id.* at ¶ 4.

Mootness and standing are two interrelated doctrines of justiciability. Both standing and mootness rise out of the United States Constitution's limitation of federal court jurisdiction to actual "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. To have standing, a plaintiff must establish three requirements: (1) injury in fact, (2) causation and (3) redressability. *ACLU v. Nat'l Sec. Agency*, 493 F.3d 644, 659 (6th Cir. 2007) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102-03 (1998)). To have standing to seek injunctive relief, however, a plaintiff must also establish a "sufficient likelihood that he will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any

---

[2]Briefing on the question of mootness was completed before the Sixth Circuit's decision on class certification. Thus, Plaintiff's also argue in their brief that their claim is not mooted because the RSA does not apply to the entire proposed class. Because class certification is no longer an option, the Court needs only to address their argument that the relief is not the same.

4

continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

Mootness addresses whether the plaintiff continues to have an interest in the outcome of the litigation. *Ailnor v. City of Maynardville*, 368 F.3d 587, 596 (6th Cir. 2004). A case becomes moot and, therefore, nonjusticiable, when a plaintiff who once had standing ceases to meet all the requirements of standing due to intervening events. *Id.* (citing *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001)). To be justiciable, a real live controversy must exist at all stages of review, not merely when the complaint is filed. *De Funis v. Odegaard*, 416 U.S. 312, 316-17 (1974). A claim for injunctive relief may be come moot if the challenged conduct permanently ceases. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 66 (1987); *see also Ailor*, 368 F.3d at 596 (holding request for injunctive relief moot after the defendant had ceased unlawful practices subsequent to state enforcement of environmental regulations).

In this case, Plaintiffs' claim for injunctive relief in the form of court-supervised reformation of Defendants' nationwide claim-handling procedures has been rendered moot by the RSA. According to Paragraph A.5.b., the RSA

> provide[s] changes to claim procedures that will improve the claim handling process and benefit current and future policy holders and insureds by (i) reflecting regulatory standards in the area of market conduct for handling disability claims, (ii) addressing the [Defendants'] commitment to claim handling procedures that promote the fair, objective and thorough treatment of claims and be indicative of best practices in the handling of individual and group long term disability claims, and (iii) *complying with applicable state and federal laws and regulations*; . . .

(Court File No. 91, Attachment 1) ("RSA") (emphasis added). The RSA goes on to set forth the plan of corrective action and provisions concerning the enforcement of Defendants' compliance with the plan of corrective action. Further, the RSA provides significant supervision from the DOL and state regulators to "provide for oversight in order to ensure compliance or effect enforcement." RSA

5

¶ A(5)(c).

By its terms, the RSA provides the requested relief. The RSA requires and implements new practices and procedures to ensure Defendants are compliant with ERISA. In addition, the RSA creates internal and external oversight mechanisms to ensure these polices are created and implemented correctly. Though Plaintiffs requested the Court to supervise the institution of new ERISA compliant policies and procedures, the RSA provides significant oversight to be provided by the DOL and state regulators. Moreover, Plaintiffs have offered no evidence suggesting Defendants new procedures do not fully comply with ERISA. Therefore, there is no meaningful relief to be granted by entering an injunction ordering Defendants "to institute . . . new, national procedures that are in full compliance with ERISA." CAC ¶¶ 2-3. The Court will grant summary judgment on this request for prospective relief as moot.

The Court will not grant summary judgment on Plaintiffs' demand for an independent review of their claim for benefits, however. Though it is true the RSA provides for a re-review of claims, that process is entirely voluntarily. Moreover, as Defendants conceded to this court at oral argument, the RSA does not affect a claimants' legal rights, and a claimant who opts not to seek re-review maintains all of their rights to pursue a remedy in federal court. Therefore, Plaintiff's demand for injunctive relief insofar as it relates to their claims individually are not moot in light of the RSA.

## B. Whether Remaining Claims are Available

The Court finds it would be improper in light of its MDL mandate to grant summary judgment on the Plaintiffs' remaining claims for individual relief. For pretrial proceedings, actions are consolidated as "a procedural device designed to promote judicial economy," *Katz v. Realty*

6

*Equities Corp.*, 521 F.2d 1354, 1358 (2d Cir. 1975), and "as a matter of convenience and economy in administration." *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97 (1933). MDL cases are consolidated for the purpose of pretrial proceedings, but summary judgment is a pretrial proceeding. A transferee court may grant summary judgment in a case consolidated through MDL. *See In re Meridia Prods. Liab. Litig.*, 328 F. Supp. 2d 791 (N.D. Ohio 2004), *aff'd*, 447 F.3d 861 (6th Cir. 2006) (granting summary judgment for manufacturer in over 100 products liability actions consolidated through MDL). Because MDL seeks to promote efficiency, however, "'the transferee court typically does not rule on cumbersome, case-specific legal issues.'" *In re Nuvaring Prods. Liab. Litig.*, ___ F. Supp. 2d ___, 2009 WL 4825170, at *2 (E.D. Mo. Dec. 11, 2009) (quoting *In re Phenylpropanolamine Prods. Liab. Litig.*, 2004 WL 2034587, at *2 (W.D. Wash. Sept. 3, 2004).

If the Court determines summary judgment would promote efficiency, it cannot treat the consolidated complaint as the complaint of each of the constituent cases. "[C]onsolidation cannot effect a physical merger of the actions or the defenses of the separate parties." *Katz*, 521 F.2d at 1358; *see also First Nat'l Bank of Pulaski v. Curry*, 301 F.3d 456, 467 (6th Cir. 2002); Moore's Federal Practice–Civil § 42.13[2]. The Court has an obligation to treat the constituent cases as distinct cases and cannot merge them into a single action. *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 412-13 (6th Cir. 1998).

Thus, a transferee court in an MDL action should only rule on summary judgment to the extent it serves judicial economy and does not effect an improper merger of the constituent actions into a single case.

Here, ruling on the remainder of Defendants' motion for summary judgment will not promote judicial economy and would improperly merge the constituent actions into a single case. Defendants

claim they are entitled to summary judgment, arguing the CAC improperly states a claim for equitable relief under ERISA § 502(a)(3). Deciding this question would be futile, however, because the constituent cases bring a variety of causes of action against Defendants, not all of which are stated under § 502(a)(3). Granting summary judgment on all of the constituent cases, based on the manner in which the claim was presented in the CAC, would threaten to improperly merge the individual cases into a single action.

Moreover, even if this claim were common to the constituent cases, Defendants argument cannot be resolved by this Court without analysis of the unique facts of the constituent cases. For example, whether Defendant is entitled to summary judgment may depend significantly on whether the constituent plaintiffs have alternative remedies available under ERISA. Thus, the Court determines it would not promote judicial economy to resolve the individual aspects of the constituent cases at this time. *See Nuvaring*, 2009 WL 4825170, at *2.

Finally, based on the oral arguments of counsel, it appears that the transferor circuits, while not entirely split on the question, have pronounced different interpretations of when § 502(a)(3) claims are available. Though these cases are governed by the authority of the United States Court of Appeals for the Sixth Circuit while consolidated before this Court, it seems unwise to apply the law of this circuit to cases that will soon be returned to other circuits where the result may differ.

Thus, Defendants' argument on summary judgment is not a question of law common to the constituent cases. Ruling on it would not promote judicial economy and would approach an impermissible merger the constituent actions into a single case. For this reason, the Court will decline asserting its authority.

## IV. CONCLUSION

For the forgoing reasons, the Court will **GRANT IN PART** Defendant's motion for summary judgment (Court File No. 141), and Plaintiffs' claims for prospective injunctive relief will be **DISMISSED** as moot.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**